Good morning, your honors. May it please the court. My name is Bruce Bryan on behalf of Mr. Beale. This case raises the issue of what a warrant must say to satisfy the particularity requirement of the Fourth Amendment as it would pertain to a search intended for computers in a designated location. Now, here Mr. Beale contends that the warrant at issue here did not satisfy the particularity requirement of the Fourth Amendment in that the warrant was separated into clear sections dealing with the separate components of the Fourth Amendment. The warrant should have said in the place to be searched part of the ‑‑ What more particularity should have been provided? Your honor, what the warrant said was in the place to be searched, Dekoby Enterprises and the address and describing the exterior of the building. I submit that the warrant should have said explicit reference to computers ‑‑ It allowed the seizure of computers, didn't it, specifically? This is one argument that's been made by the government here that these ‑‑ Yeah, no, I don't care whether it's a government argument or not. It did the warrant. It specifically say seizure of ‑‑ and if it allows seizure, isn't it kind of absurd not to imagine that it meant also search, see what they said? I respectfully submit not. And the first reason I would say that is, is that, again, going directly to the language of the Fourth Amendment. And the Fourth Amendment is very clear as to what the warrant must include. But let's assume for the moment that what you're saying could be argued. How can that in any way go undercut the notion that the officers who did that acted in good faith under Leon? I mean, you know, we could decide the question that you're posing, but in terms of officers there, this argument, which in English terms is a nice one, fine, but officers there, could they possibly tell the difference? True, the good faith exception is broad, but it does recognize four situations, and the good faith exception does not apply. Here Mr. Beale contends that it did not apply under the fourth exception, which is that the claim that the warrant was so facially deficient that it was unreasonable to rely on the warrant. And the basis of that argument is that the warrant is ‑‑ The attachment B clearly spells out computers and all of the related things. I mean, why isn't that sufficiently clear? I would ‑‑ the contention would be it does not clearly. It does computers and electronic media, computer and electronic hardware. Attachment B is the attachment to the section of the warrant that pertains to particularizing the descriptions of the items to be seized, a separate component of the particularity requirement. You're saying that the face of the warrant, the first page, should have had the words computer and computer equipment. Yes, yes. What about file cabinets? Should it list file cabinets, drawers, desks? I think the way to view this is if courts have recognized that there are very highly guarded, highly private types of containers, and so far it is, for example, this warrant didn't just simply say you may search anything that is within the confines of this building. It then also said, and it would have been required to say, that you may also search storage areas. Why? Because you need that direction. There is this expectation and specific need for direction to be able to search storage areas. Well, here we have, and this court and others have recognized the highly greatened expectation of privacy in computers. Great, immense amounts of information stored, much of it private. If there was ever anything that needed specific direction as to saying you may search this, it is that. Now, what I would also do is to state to the court the opinion of Riley by the Supreme Court. I think it is very close by analogy to what I am talking about. In that case, there was a search incident to an arrest of an individual who had a cell phone on him. The argument was we only needed the right to search the person to be able to search the cell phone. If we have that right to search generally, we have that right to search specifically into the cell phone. The Supreme Court said absolutely not. You must get a warrant that specifically allows the search of that cell phone. Isn't there all the difference between a situation like that that speaks to the person but nothing about the phone and here where it says that they can seize the phone? If in Riley they had said that they could seize the phone, that's different. That's a different situation, isn't it? Well, the argument I You said about a storage area. Yes. But you can't seize a storage area, so one word covers the whole thing. With a phone, you can and I suppose you could distinguish, but why would you on earth do that? Well, one is to, let's look at the Fourth Amendment itself. What effectively the argument is saying here is that the Fourth Amendment need not have said and spelled out, the Fourth you must, the first component, specifically designate the crime that there's probable cause for. Second, explicitly says you must particularly describe the place to be searched and third, you must particularly describe the items to be seized. So to say that, well, a warrant that only says you may seize, we don't, we can ignore that the Fourth Amendment says explicitly the warrant must also say that particularly describe the place to be searched. So in other words, it is saying that it is implied in the warrant, the right to seize, the right to search, when it gives the right to seize. The Fourth Amendment does not imply that right. It says explicitly. I can see it cutting in the other direction and saying, uh, you may be given the right to search, but that doesn't mean that you have an ultimate right to seize and take away because that is more, I have more trouble seeing it in the opposite direction, but it's an interesting argument. And also if I might point out that the argument, uh, there's a seven circuits case, Pfeiffer on which the government relies. And that case is looking to rule 41, uh, which says there's the right to later search computers after they've been seized. The first, I would say no federal rule can, uh, limit what the Fourth Amendment requires. Of course, the second is that if you look at that rule, it does not in any way limit what the Fourth Amendment says. Rule 41 says what the contents of the warrant is. Subpart A says you must list the place to be searched. Subpart B on which the government relies here and Pfeiffer relied says in a warrant issued pursuant to subpart A, in other words, you have said what place can be searched. You may then seize computer and later search it. So I submit it comes back again to the explicit language of the Fourth Amendment. Um, I, I, I'll, I rest on the remainder of my brief. Thank you. We'll hear from the government. Uh, good morning, your honors, uh, Rajiv Dosanjh for the United States. Uh, the warrant here did authorize the search, uh, of the seized computers and electronic media. Uh, the warrant incorporated on its face attachment B and attachment B says the authorization includes the search of electronic data. The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in the support of this warrant. Now the, we don't challenge that the warrant, uh, did not incorporate by reference this, uh, affidavit, but nevertheless it means attachment B clearly contemplates both a seizure and a search of computer equipment. In addition, there's the addendum that the magistrate judge himself appended to the warrant, which provides instructions, uh, for the search of computers, quote, authorized by this warrant. Um, now that clearly shows again, the magistrate judge reading this warrant understood that it would include a search. Um, so if the magistrate judge, uh, uh, understood that it's, it's unclear how, uh, the officers executing the warrant could act in, in bad faith, um, by, uh, by also searching, uh, and seizing and then reviewing, uh, the computer equipment. Um, case law also supports our view of the gainiest decision by this court. The court recognized that quote, a warrant for computer data presumptively authorizes the later review of media and information consistent with the warrant. Um, as a matter of policy, if the, uh, place to be search was included the words computer and a computer equipment and all the items listed in attachment B, um, it's unclear how that would, um, in any way advance the, the, the, uh, goals that, that the defendant here is, is claiming must be advanced by the fourth amendment, um, and which are advanced by the fourth amendment. The, the, the case law that he mainly cites, um, have found a lack of particularity, not what in the place to be searched. He has cited no case that requires the place to be searched to list computers. Um, he cites cases where, uh, the, um, items to be seized were not particularly specified. But just as a matter of practice, wouldn't it be a good idea if one just said, as the addendum says, both search and seize just because there may be some circumstances where the two are not the same? Uh, Your Honor, I, I would agree that in some situations that would be better. I think what this is a, uh, what was used here was a form that tries to cover a lot of different, uh, situations. Oh, I know. But you know, forms are forms. You can make better forms too. That is true, Your Honor. But again, I think, uh, as a policy matter, the, the, the, the policy concerns that the defendant keeps raising is that, um, a computer is akin to a residence and you can, by allowing the search of a computer, you can go through all the files that a person has like a, like the file cabinet. Um, by listing the file cabinet as a place to be on the search, the restrictions on the search and the, the, what makes it reasonable and what brings it down within the bounds of reasonableness is a specific, specific items to be, uh, seized with relation to the crime for which there's probable cause. And if you look at the, the addendum, uh, sorry, the attachment B here, it is very precise. Um, it, that does mean though, a computer search is like the search of a file cabinet. If you're looking for documents that, um, are evidencing financial fraud and you have a file cabinet, you have to at least take a look at many of the files and, and all. Well, yes, except that a file cabinet is only going to have so much in it. Correct. A file cabinet ain't that big. Correct. Well, a computer can have a zillion things. And so one might suggest that the degree of interference with a person's privacy is greater when you're talking about a computer. So that doesn't mean that you don't have a right to search it. Uh, but maybe more specificity would be useful. And I, again, I think the specificity here, your honor was provided by the, the attachment B and its identification. Reading that carefully, it, it is, is quite precise in what they're looking for. Um, and it is, it always ties back into the crime itself and for which there's probable cause. Um, there's no contest here that, that the warrant otherwise was sufficient. Um, and so that is what does the work really. The, the place to be searched and, and we go back to the fourth amendment, this complied with the fourth amendment. The place to be searched was Daycobe Industries. At the time the warrant was issued, we, uh, the government did not know who in Daycobe Industries was sharing, uh, child pornography on the internet. Um, we, the agents walked in, um, talked to the own, one of the owners. Um, and then, uh, uh, Mr. Beale came forward, volunteered to talk to the agents and, uh, provided, uh, he, he can essentially confessed that he was the one they were looking for. Up until that point, we did not know. Um, so in terms of specifying a place, the, the place was as specified as much as possible here, I think, um, including storage containers. Again, the fact that it does contain storage containers in the place to be searched, uh, shows that, that once you are down to that level, what's really doing the work of preventing an unreasonable search is the connection of the items to the, to the crime. Um, and, and here attachment B really does, um, uh, narrow it down as much as possible. Um, and within the bounds of reasonableness. Um, I'd like to quickly address, uh, the other issue that may come up on rebuttal, which is the, whether Mr. Beale was in custody at the time of his, uh, his, uh, questioning by the, uh, officers. Um, there are, as the district court found, there are numerous factors here that support the idea that he was not in custody at that time. Whose burden was it? Your Honor, I think, uh, this is a question that's not been answered by, uh, this court. It, it, uh, very recently refused to, or declined to, to, to answer the question saying it was unnecessary. I think it's, it's unnecessary here as well. Um, it, it, we cited a case from the district of Vermont, which kind of covered the legal ground, which suggested that the, the, the, uh, kind of weight of authority in the circuits is that it's the defendant's burden. Even if it's the government's burden, you meant it. And I, the district court put the burden on the government. It did. And, um, and so I think it's not an issue that has to be addressed. We, we raise it just as, as to flag that issue. Um, but it's, uh, I think it, it makes sense because the, the, the standard here, um, is that the government has to affirmatively convey, um, that a person is not free to leave. And also that there is a level of, of coercive, uh, atmosphere akin to a station station house questioning, um, and akin to formal rest. And I think when you're trying to prove those things, I think it does make sense, uh, to, to, to require the defendant to ultimately have the burden. Of course, the government will always be in a suppression hearing. We'll put on it's, it's, uh, it's evidence. Um, and again, here, I don't think it's necessary to decide that question. Um, but there is numerous factors here that, that cut in favor of finding that he was not in custody. Uh, he volunteered, uh, to talk to the agents. He told one colleague to leave the room. The room was an open room. It was not closed. Um, he was interviewed in his place of business. It was, there was familiar surroundings. He was not in handcuffs. He was not restrained. There was no physical force. Um, the agents, which way does the fact that you tell him that he can go to the bathroom cut? I mean, you can, you can look at that either way. Hey, you're free to go or you have to get our permission to go to the bathroom. That's true. But I think here, uh, it was, it was more poses a question like, do you want to go to the bathroom? Um, uh, again, that does, that does maybe perhaps, I don't know which way that cuts. Yeah, it's, but again, I think that the district court looked at all the factors. They never said to him, you can leave any time. They never said that, but they never said you can't. Um, and this is, uh, something that the court has, has come back to in a number of cases, cell phone. Uh, they wouldn't let him use it. Uh, while a search was being conducted on the phone, it was, uh, as the court found, the district court found, uh, under those circumstances, I think a reasonable person would have understood that what they were to go see his son, but they didn't let him. Uh, he, he never asked to go see him himself. The agents offered, we can go talk to him. Um, we can tell him, we can like basically have a cover story so that we're not revealing the fact that this is what's going on inside. Um, and again, he never asked to go outside. Um, he also understood that the, what was the purpose of keeping the cell phone was to, um, to review what's on it. I think there may be people much younger than I who feel that if they can't use their cell phone, they must be under arrest a little bit harder for people my age. Your honor, I would agree. I, I, I'm trying to break my addiction all the time to it. But, uh, um, again, I think it doesn't meet the standard. The standard is quite high, um, to, to have a multiple kind of, there's, there's multiple factors that issue here that did not rise to the level, uh, uh, subset of creating such a coercive environment that, uh, this would be akin to being in custody. Um, unless there's any other questions, I will rest of my brief. Thank you. Thank you. We'll hear the rebuttal in addressing what has been said about the custody, um, issue. Yes, there are multiple factors here that, uh, way I submit in favor of saying that he was in custody. And I, again, I set the Riley case as the importance of a cell phone. I mean, to say you need a warrant to specifically search a cell phone. Why? Because there is such this heightened expectation of privacy in it. And if that is taken from you and here, not only was it, you said, I can't use your phone. Oh, it's being searched. Well then there's no offer to use any form of communication with his son. So that is a factor to look at in combination with others. And then the volunteer to, to talk to them, right? When the, when the agents arrived, he wasn't their target. They didn't know, but he just agreed to talk to them. The argument in, uh, as far as statements go is it would be subsequent to his initial incriminating statement as to whether these, this continued interrogation should have, should have been allowed, uh, at that time, or if he was really, um, subject to interrogation in custody. Uh, an argument turning to the, um, fourth amendment issue of saying, well, uh, uh, we didn't list, we didn't know, uh, or in a sense kind of, we couldn't have listed the computers before we went in, in the warrant. I would submit that's not true. Uh, I mean, and by the nature of the crime that was asserted here, that's where the, uh, where the evidence came from. Of course it was through computers. So of course they would have had probable cause to search computers. So clearly they had the ability to designate it as a place to be searched. And then the final remark. Why is it that you contend that, uh, attachment B isn't sufficient since it mentions computers, mentions the crimes, mentions search and seizure? Yes. Attachment B. It's, it's, it's attached to the search warrant and it's mentioned on the face of the search warrant. Yes. It's attachment B says, Judge Kearse, uh, that it, it describes items to be seized. So in a sense, well, to, yes, the seizure. Yes. But what the government is hanging its hat on is, is, uh, one or two sentence in the sentences in there where it says and search. So the whole intent of attachment B is you can seize. What is the point of seizing them, but to search them? Need to have explicitly, and here let's, for example, um, what did happen in this case where you had a search happen first that preceded the seizure of the computers. Now it didn't seize all computers. They seized those computers that after the search and review and initial search and review disclosed certain computers that they said, okay, this week, these, these computers we believe have, uh, evidence of, of a crime. We will seize these. So the question is what's the authority there from the warrant to search initially all computers to find those computers that they wish to seize. We submit that that authority was not in the warrant. Why would you seize computers if you could not search them? I mean, why, why would you, there are some things that you might seize because of what they are in themselves, but why would you in a situation like this ever be given authority to seize a computer if not to search it? Well, I think it depends on the situation. In the vast number of... I'm talking about this situation, about where you're looking for porn. Why would you seize the computer? The computer is not itself pornographic. I might think so, but most people wouldn't think the computer itself is pornographic. So why in a porn identification would seizure ever mean anything except to search? Well, say, look, here we have a business, Dekobi Enterprises. There was, and multiple employees in the business, business that depended in great part on computers, large numbers of computers. So if a warrant simply said, we seize computers, then isn't that overly broad to say, seize all of Dekobi's computers, we'll take everything out of there, shut this business down, then we will search. No, it reasonably, in terms of to satisfy the Fourth Amendment and probable cause, there would be then an initial search to determine which of those, and it was only a few, that would, might, or did contain evidence of a crime. And let me extrapolate the example. Supposing you have IBM. Supposing you're at a plant in Binghamton, their main, one of their main areas. Thousands of computers, mainframes. One employee has looked for child pornography on some computer unknown. Would a warrant in those, in that situation, which says, you may seize IBM's computers and later search them off-site, would that be constitutional? I would say no. Thank you.